UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------x
LAZARO BURT,

                    Plaintiff,

  -against-

ROLANDO ALEMAN and
MIGDALIA RODRIGUEZ,

                    Defendants.
------------------------------------------------------------x

CV 05 4493(NGG)(CLP)

**AMENDED COMPLAINT**

**A JURY TRIAL IS DEMANDED**

## PRELIMINARY STATEMENT

1.    This is a civil rights action in which the plaintiff, Lazaro Burt, seeks relief for the defendants' violations of his rights secured by the Civil Rights Act of 1871, 42 U.S.C. Section 1983, and of rights secured by the Fourth and Fourteenth Amendments to the Constitution of the United States.

2.    The plaintiff seeks damages, both compensatory and punitive, an award of costs, interest and attorney's fees, and such other and further relief as this Court deems equitable and just.

3.    In one of the darkest chapters of police misconduct in New York City history, plaintiff, an innocent man, was convicted of a murder he did not commit. Defendants Rolando Aleman and Migdalia Rodriguez, (hereinafter "Aleman" and "Rodriguez"), then officers in the NYPD, either intentionally or through deliberate indifference, played a pivotal role in plaintiff's false arrest, malicious prosecution and, ultimately, conviction and confinement in New York City jails and New York State prisons for eight and one-half years.

4.    In connection with the August 20, 1992 murder of Wilfredo Cesareo in Queens, New

York -- a murder of which plaintiff was factually innocent -- Mr. Burt spent between August 22, 1992 and March 9, 1994, a period of one year, six months, two weeks and one day, in pre-trial, trial and pre-sentencing detention in New York City jails awaiting trial, and another eight and one-half years languishing in various New York State prisons after his conviction.

5. In early and mid-2002, private attorneys and representatives of the Queens District Attorney's office separately undertook new investigations into plaintiff's case. As a result of those investigations, plaintiff was brought before a Supreme Court judge. A 440 hearing was held, at which witnesses agreed that plaintiff was innocent, and one Jarrett Smith – who was already in prison serving a term for robbery – was the actual perpetrator. Based on this evidence, plaintiff was released from custody, over ten years after he had been arrested.

6. But for defendants' unconstitutional conduct, plaintiff never would have been prosecuted for and convicted of the murder. This action seeks compensation for the pre-trial, trial and pre-sentencing injuries endured by plaintiff occasioned by defendants' willfully malicious and/or deliberately indifferent acts.

## JURISDICTION

7. This action is brought pursuant to 42 U.S.C. §1983 and §1988, and the Fourth and Fourteenth Amendments to the Constitution of the United States. Jurisdiction is conferred upon this Court by 42 U.S.C. §1983 and 28 U.S.C. §§1331 and 1343(3) and (4), this being an action seeking redress for the violation of the plaintiffs' constitutional and civil rights.

## VENUE

8. Venue is proper for the United States District Court for the Eastern District of New York pursuant to 28 U.S.C. §1391 (a), (b) and (c). All of the material events described in this

Complaint occurred in Queens County, New York.

## JURY TRIAL DEMANDED

9. Plaintiff demands a trial by jury on each of the claims pleaded herein.

## PARTIES

10. Plaintiff is resident of the State of Virginia.

11. Defendant Aleman resides in New York.

12. Defendant Rodriguez's residence is presently unknown.

13. Defendants Aleman and Rodriguez were at all times relevant herein duly appointed and acting officers, servants, employees and agent of the New York City Police Department, a municipal agency of the City of New York. Defendants are sued individually.

14. At all times relevant herein, defendants were acting under color of the laws, statutes, ordinances, regulations, policies, customs and usages of the City of New York, and the New York City Police Department, and were acting in the course and scope of their duties and functions as officers, agents, servants, and employees of the New York City Police Department, and otherwise performed and engaged in conduct incidental to the performance of their lawful functions in the course of their duties. At all times relevant herein, they were acting for and on behalf of the New York City Police Department, with the power and authority vested in them as officers, agents, servants and employees of the New York City Police Department, a municipal agency of the City of New York.

## STATEMENT OF FACTS COMMON TO ALL CAUSES OF ACTION

### The False Case Against Lazaro Burt

15. Shortly after midnight on August 20, 1992, at the corner of 105th Street and

Northern Boulevard in Queens, New York, Wilfredo Cesareo was shot in the chest and killed. There were two eyewitnesses to the murder: Mr. Cesareo's common-law wife, Lissette Saillant, and Carl "Heavy" Drummond. Both witnesses were standing nearby when Mr. Cesareo was shot. According to Ms. Saillant, the shooter had sexually assaulted her prior to the shooting.

16. On or about August 21, 1992, Ms. Saillant identified Mr. Burt as the shooter in a lineup identification procedure. Defendant Rodriguez, then a detective, arranged the line-up procedure.

17. On the same day as the lineup, and shortly after the lineup took place, Saillant called defendant Rodriguez and told her that she had identified the wrong person.

18. Rodriguez refused to listen to Saillant's claim of misidentification, and told her there was nothing that could be done.

19. Rodriguez did not tell anyone what Saillant had told her about the misidentification.

20. Rodriguez testified in the grand jury that Saillant had identified Mr. Burt. Rodriguez withheld the fact that Saillant subsequently told her that she had identified the wrong man.

21. Defendant Aleman was on duty at the time of the murder. Aleman made a statement the night of the murder to police investigators, the substance of which was that he saw Mr. Burt "with something under his arm" walking by the scene of the shooting shortly before the shooting took place.

22. At trial, Aleman's testimony was far more expansive, and far more damning. The "something under his arm" had transmogrified to "something, what appeared to be a gun. . . . I

4

told my partner, he's got a gun." Despite seeing the "gun" or the "something," Aleman did not stop Mr. Burt. Rather, he had his partner continue driving around the neighborhood while they discussed "possible tactics." It was while they were discussing "possible tactics" that Cesareo was murdered. Nor did Aleman send any message over his radio that he had seen a man with a gun.

23. Aleman's statement to police investigators that night was false, and Aleman knew it was false. Aleman's testimony at trial was false, and he knew it to be false.

24. On or about August 26, 1992, the Queens County District Attorney filed Indictment No. 3794/92 charging Mr. Burt with: (1) Murder in the Second Degree (Intentional Murder); (2) Murder in the Second Degree (Depraved Indifference Murder); (3) Criminal Possession of a Weapon in the Second Degree; and (4) Sexual Abuse in the Third Degree.

25. Mr. Burt was arraigned on Queens County Indictment No. 3794/92 on September 16, 1992. He pled not guilty. Mr. Burt made no statements admitting responsibility for the murder or any of the other related charges.

26. Mr. Burt declined any plea offers, and maintained his innocence. A jury trial commenced on January 31, 1994, before Hon. Thomas Demakos, J.S.C.

27. On February 14, 1994, Mr. Burt was convicted of one count of Murder in the Second Degree; one count of Criminal Possession of a Weapon in the Second Degree, and one count of Sexual Abuse in the Third Degree.

28. On March 9, 1994, Mr. Burt was sentenced to twenty-five years to life in prison.

### The Post-Conviction Exoneration

29. In December, 2001, two attorneys working pro bono on Mr. Burt's behalf

commenced a re-investigation of the murder. They began to search for both Lissette Saillant and Carl Drummond.

30. In May, 2002, Ms. Saillant was located. Ms. Saillant told the attorneys, as she had told defendant Rodriguez a decade before, that she made a mistake when she identified Mr. Burt. She also said that after Mr. Burt's arrest, she saw the man who actually shot Wilfredo Cesareo on the street, in Queens.

31. At the same time the two attorneys were re-investigating the murder of Wilfredo Cesareo, representatives of the Office of the Queens District Attorney also were re-investigating the crime, based on information communicated to them by law enforcement sources outside Queens County.

32. Lissette Saillant gave a statement to the Queens District Attorney, confirming what she had told the two attorneys.

33. On June 14, 2002, an NYPD detective showed Ms. Saillant a photo array containing six pictures. Ms. Saillant identified an individual by the name of Jarrett Smith as the real killer.

34. Carl "Heavy" Drummond also was found. He had disappeared before trial and could not be located. Drummond gave a videotaped statement to the Queens District Attorney, explaining that a man named "Shorty" had killed Mr. Cesareo, that Shorty was previously known to him, and that Mr. Burt definitely did not commit the murder. Drummond was shown a photo array and identified Jarrett Smith as the murderer of Wilfredo Cesareo.

35. Based upon this information, on September 24, 2002, Mr. Burt's attorneys brought a motion pursuant to C.P.L. § 440.10(1)(g), based upon newly discovered evidence, to vacate Mr.

Burt's judgment of conviction and dismiss the indictment.

36. On September 26, 2002, Mr. Burt was brought before Hon. Robert J. Hanophy, J.S.C., in Queens Supreme Court.

37. Mr. Burt's lawyers called as witnesses both Lissette Saillant and Carl Drummond. Under questioning, Ms. Saillant admitted that in 1992, when she originally identified Mr. Burt from mug shot photographs, she "smoked some crack" that evening, and that she was "smoking crack at that time in the point in time [sic] in my life." She further admitted that she used drugs at the police precinct on the night she picked Mr. Burt's photograph, and specifically, "When I was looking through the pictures I was high."

38. Ms. Saillant also testified that after she left the precinct, she realized she had made a mistake in identifying Mr. Burt as the shooter. Ms. Saillant told defendant Rodriguez that she had identified the wrong person, but was ignored.

39. Approximately a year after Mr. Cesareo was murdered, Ms. Saillant saw the man who shot her husband. At that time, Mr. Burt was in prison. Ms. Saillant did not call the police or the District Attorney's office.

40. Finally, Ms. Saillant testified under oath that the man who shot Wilfredo Cesareo was Jarrett Smith, whom she identified from a photograph. She looked at Mr. Burt from the witness stand, and conclusively said he was not the man who shot her husband. "I'm positive," she said.

41. Carl Drummond also was called as a witness at the 440 hearing. He testified that he "witnessed Shorty shooting Lissette's husband." Again, as he had done on the videotape, Mr. Drummond identified Jarrett Smith's photograph from a photo array as being Shorty, the man

who killed Wilfredo Cesareo.

42. Mr. Drummond, like Ms. Saillant, looked down from the witness stand at Mr. Burt and testified that he was "positive" he was not the man who shot Mr. Cesareo.

43. Based on the testimony of the two witnesses, Executive Assistant District Attorney Gregory Lasak admitted that Mr. Burt was not responsible for the death of Wilfredo Cesareo, and joined in Mr. Burt's 440.10(1)(g) motion:

> What [Carl Drummond] had to tell your Honor is basically the same thing he told the detectives back in August of 1992. He is brutally honest, he is very candid and based upon his testimony before your Honor of the previous witness, who was the only eyewitness to identify Mr. Burt at the murder trial during which he was convicted, I would join in the motion of the defense attorney.

44. Judge Hanophy issued a Decision and Order pursuant to C.P.L. § 440.10(1)(g) vacating Mr. Burt's judgment of conviction and dismissing his indictment. Exhibit 8 (Decision and Order dated September 26, 2002). In the Order, Judge Hanophy noted,

> [U]pon reviewing the motion submitted by the defendant and having taken testimony from witnesses and on consent of the People, this court finds that new evidence has been discovered since the entry of a judgment taken against the defendant on March 9, 1994, which could not have been produced by the defendant at the trial even with due diligence on his part and which is of such character as to create a probability that had such evidence been received at the trial the verdict would have been more favorable to the defendant. In addition, this court also finds that the defendant's motion was made with due diligence after the discovery of the new evidence presented at this hearing. Accordingly, it is hereby;
>
> ORDERED that the judgment against Lazaro Burt under Queens County Indictment No. 3794/1992 entered on March 9, 1994, is vacated and upon the further motion of the People of the State of New York that Indictment No. 3794/92 is dismissed. It is further;
>
> ORDERED that the defendant be IMMEDIATELY RELEASED from the custody of the NEW YORK STATE DEPARTMENT OF CORRECTIONS, and that he is to be released on his own recognizance and it is further;

>ORDERED that the record of this Indictment be sealed in accordance with Criminal Procedure Law § 160.50.
>
>This opinion shall constitute the decision and order of this court.

45. Over a decade after he was arrested, Lazaro Burt was released from prison.

46. On or about December 6, 2002, the Queens County District Attorney filed Indictment 3174/2002 charging Jarrett Smith with one count of Murder in the Second Degree (Depraved Indifference Murder) in connection with the death of Wilfredo Cesareo. As of that date, Smith was already serving an unrelated prison sentence of between 34 and 40 years for a 2000 conviction of Robbery in the First Degree, Assault in the Second Degree, and related offenses.

47. On January 3, 2003, Smith pled guilty to Assault in the First Degree in connection with the death of Cesareo. He was sentenced to between five and ten years in prison, to run concurrently with his sentence of 34 to 40 years.

### Damages

48. This action seeks damages on behalf of plaintiff for the period between August 22, 1992 and March 9, 1994, a period of one year, six months, two weeks and one day, in pre-trial, trial and pre-sentencing detention in New York City jails. During that time, plaintiff was subjected to and did endure numerous and severe assaults, batteries and injuries to his person, and was subjected to and did endure extraordinary emotional pain and suffering.

49. Plaintiff's criminal charges were dismissed on grounds not inconsistent with his innocence. Indeed, plaintiff's criminal charges were dismissed on the specific ground that he was actually innocent.

50. Plaintiff did not commit any crimes or violations on August 20, 1992.

51. The conduct of defendants Aleman and Rodriguez, who acted at all times under color of state law and within the scope of their employment and authority in maliciously prosecuting plaintiff, directly and proximately caused plaintiff serious physical and emotional injury, mental anguish, humiliation and embarrassment.

52. Defendants acted with reckless and wanton disregard for the rights of the plaintiff.

53. As a result of all of the acts alleged herein, plaintiff suffered and continues to suffer physical and mental pain and anguish, and emotional distress.

## FIRST CLAIM

### DEPRIVATION OF RIGHTS UNDER THE FOURTH AND FOURTEENTH AMENDMENTS AND 42 U.S.C. §1983

54. Plaintiff incorporates by reference every allegation set forth in this Complaint as if fully set forth herein.

55. The conduct and actions of defendant Rodriguez, acting under color of law, in maliciously prosecuting plaintiff, was done intentionally, maliciously, with a deliberate indifference and/or with a reckless disregard for the natural and probable consequences of her acts, was done without lawful justification or reason, and was designed to and did cause specific and serious pain and suffering in violation of plaintiff's Constitutional rights as guaranteed under 42 U.S.C. §1983, and the Fourth and Fourteenth Amendments to the United States Constitution.

56. As a result of the foregoing, plaintiff was deprived of his liberty, was subject to great physical and mental pain and humiliation, and was otherwise damaged and injured.

## SECOND CLAIM

### DEPRIVATION OF RIGHTS UNDER THE FOURTH AND FOURTEENTH AMENDMENTS AND 42 U.S.C. §1983

57. Plaintiff incorporates by reference every allegation set forth in this Complaint as if fully set forth herein.

58. The conduct and actions of defendant Aleman, acting under color of law, in maliciously prosecuting plaintiff, was done intentionally, maliciously, with a deliberate indifference and/or with a reckless disregard for the natural and probable consequences of his acts, was done without lawful justification or reason, and was designed to and did cause specific and serious pain and suffering in violation of plaintiff's Constitutional rights as guaranteed under 42 U.S.C. §1983, and the Fourth and Fourteenth Amendments to the United States Constitution.

59. As a result of the foregoing, plaintiff was deprived of his liberty, was subject to great physical and mental pain and humiliation, and was otherwise damaged and injured.

WHEREFORE, plaintiff demands the following relief jointly and severally against each defendant:

a. Compensatory damages in the amount of TEN MILLION DOLLARS ($10,000,000);

b. Punitive damages in an amount to be determined by a jury;

c. The convening and empanelling of a jury to consider the merits of the claims herein;

d. Costs and interest and attorney's fees;

e. Such other and further relief as this Court may deem appropriate and equitable, including injunctive and declaratory relief as may be required in the interests of justice.

Dated:     New York, New York
           July 10, 2006

                              KUBY & PEREZ LLP
                              Attorneys at Law

                              By: _____
                              DANIEL M. PEREZ, Esq. [DP-0032]
                              119 West 23rd Street, Suite 900
                              New York, New York  10011
                              (212) 529-0223

                              For the Plaintiff